Good morning, Your Honors. May it please the Court. Jennifer Sheets on behalf of the appellant, Darryl Darment Shirley. I'd like to discuss two important issues that are raised in the briefs and the certified issues before you, and I'd like to reserve two minutes for rebuttal, please. The first issue is arguably the most important issue, and that's the Batson v. Kentucky issue of whether or not there was purposeful discrimination on the part of the prosecutor in dismissing the two prospective African-American jurors with the defendant, the appellant, being an African-American. In this case, the procedural context is extremely important because Mr. Shirley was prosecuted in 2005, and that's when the U.S. Supreme Court decided Johnson v. Kentucky, which changed the law in California regarding the steps of Batson. So in Mr. Shirley's case, the court of appeal did not address a second step of Batson, which requires the prosecution to set forth race-neutral reasons for dismissing the prospective juror. That is why, in this case, we did not have any evidence set forth on behalf of the State as to why the jurors were dismissed until 2013, when the district court ordered an evidentiary hearing and the prosecutor was called to testify. In this case, the prosecutor reasonably did not have any memory of the case and testified that he had no notes and no contemporaneous notation of any kind regarding his reasons for dismissing the jurors. And so the court took that into consideration and made an oral decision. And it's the oral decision that I think is most important here because it puts in perspective this issue, which is extremely complicated because it involves somewhat of a fiction. And I'm going to use the Court's own language real quickly to put it in that context. I think, you know, I am the more I see of Batson, the more I see of the wisdom of Justice Marshall's separate opinion. I think it was a concurrence where he said that you can't really have peremptory strikes. In the Batson regime, they are at war with each other because, you know, lawyers are out to win. And I think it is a little bit of a fiction to think the race of jurors or the sex of jurors makes no difference at all. I think the reality is it is just one of those things that tends to make people identify with each other. And I think it's, you know, for better or for worse, it's hard to completely remove from one's mind. It is just so much part of who we are and our culture. Then the Court went on to discuss how Paulino v. Harrison or Paulino II is applicable to this case. The one part missing from the Court's analysis was the most important part, and that is that if we've set forth a prima facie case of Batson discrimination and the State has offered no reason for dismissing the jurors, there has to be a presumption at that point. And if there is no presumption that the purposeful discrimination preponderance has been satisfied, then we eviscerate the entire second Batson process, because we go back to third. If there is no evidence at step two, what did you say after that? It's just a little hard to understand. It's a very echoey room. So could you just repeat what you said about I was having a hard time, too, here. Oh, okay. About the presumption. Right. So in Paulino II, the Court acknowledges that the prosecution has no memory, no notes, no contemporaneous understanding of why they had dismissed the jurors in that case. So the Court goes on to say that they are going to go into the step three of Batson, but that because there was the prima facie showing of a Batson error or Batson that they could proffer for dismissing the juror, that in most cases that would be sufficient to satisfy the preponderance. That's the problem that is puzzling, when they say in most cases, and then in one or two of the cases, they say, well, there may be not direct evidence, but there may be circumstantial evidence at stage three. And I'm not quite sure what that means, what type of review can be done at stage three, what would constitute circumstantial evidence. And I'm not entirely sure whether some of that should really be at stage two or at stage three. The first question that I think was left open in Paulino is whether a prosecutor's general practices are sufficient if the prosecutor doesn't remember what went on at the trial, but says I always recuse people over 6 feet, I don't trust them. Is that enough, then, that he excused someone over 6 feet to say that's my general practice, I always do it, but I have no recollection in this case? That's a question. If that's not enough at stage two, can it be done at stage three by the judge saying, well, you know, I see reasons at stage three. The prosecutor may not remember them, but they're good reasons. Or the fact that he said it and it's not enough at stage two, can I consider that at stage three? I mean, those are the sort of basic problems left open. What is your answer to the first one, if the prosecutor says, here are my practices, I don't remember, but they would cover this? I would find two significant problems with that. One is that the appellant should not be penalized for the delay that happened here and the prosecution's lack of reasons, which I think when you allow a prosecutor to provide, I mean, it is speculation, pure speculation as to, you know, why they dismissed these particular jurors. I mean, there were three individuals, you know, that were sitting before the prosecutor, and it basically denies the fact that there were the three individuals. And the second most significant part is that those three jurors were black and there is no reason. I think you're going to answer in the question, and this is a really important question, about how Paolino works and doesn't work. And so the first question is, does Paolino leave open the question about whether the actual reasons are required, or does it permit the court to rely at stage two on the general practices of a prosecutor when he or she can't remember? It leaves it open. I mean, I think it explicitly leaves that open. But isn't the answer that really you, a court, can consider the practices? If sufficient foundation is provided to the court, the prosecutor says, this is my practice and that's what my best belief it is, that why I would have excluded these people. I guess the problem with that is that no reasonable prosecutor is ever going to say that race is part of their consideration. I just don't think it will ever happen. That's part of the fiction. That's a claim. Well, you're rarely going to find someone who's going to say that on the stand. I grant you that. But the question is, can that type of evidence be considered? But how would you get that evidence if it weren't on the stand? In a reconstruction case, you wouldn't, which is why now the idea is right now the prosecutor is required to stand up and give the reason in court. Right. But we're necessarily in a position of a reconstruction case here and forever whatever cases are in the pipeline. So what happened, I think, is an evidentiary hearing and the district court found this prosecutor absolutely credible and professional. Getting back to Judge Thomas's question, what's wrong with relying upon his routine practice if the judge finds that's a credible explanation? Because I don't think it actually addresses race. And I don't think it can address race in reconstruction. We're still having trouble hearing. Can you try speaking up a little?  I'm sorry. Let me just say one thing. As I understand Judge Kuczynski's opinion, he did not find that proper at Step 2, Stage 2, whatever it is. Right. But did find it proper without really saying that's what it was at Stage 3. He gave the prosecutors reasons without attributing them to the prosecutor at Stage 3 and examined the record and said, well, I think there's a good reason to have excused this young woman because she didn't go to college. That didn't he didn't seem to say that was the prosecutor's practice. At Stage 2, he said it's not enough that it was his practice. Right. And then he gave the same reasons on behalf of the court at Stage 3. That's an interesting. If I may, Your Honor, I agree with you to some extent that he said that he found that the prosecutor's discussion of their practices was not sufficient evidence of an actual reason, did not provide an actual reason. And he said you've got to have actual reasons. Yes. Right. And then he went into the third prong. And in the third prong, I don't think he actually used the prosecutor's reasons. He provided a juror analysis and statisquores. He appears to provide the prosecutor's reasons as his reasons, good reasons in the record, rather than good reasons for the prosecutor, rather than adopting the prosecutor's reasoning. But it could, those questions which are open could be reached at Stage 2 or possibly at Stage 3. What's your position? I think Judge Thomas asked what is wrong with the prosecutor coming in and saying, well, I always recuse or I always challenge people over 6 feet, which is what I'm thinking of. And this person's over 6 feet, so it's clear to me that's who I would have challenged. Because there's no historical significance of someone who's 6 feet tall. And there is historical significance to someone who's African-American. But that just goes to the rationale. I mean, that's just a hypothetical. The question is, if a prosecutor comes in and says, this is what I always, I don't remember this case, I don't remember these jurors, but here is my practice. And as I look at the jurors today, this is why I believe I would have excused them, because I've done that in every single other case. And it's believable testimony. What's wrong with that? Because these are particular jurors that their backgrounds matter. I mean, he's going to have had specific reasons for dismissing this juror, whether it was that she was not enrolled in college and the other was. But he is giving specific reasons. He's just saying, I don't recall why at the time, but this is the way that I do things on the usual and ordinary course of business. Now, the trier of fact can choose to believe it or not based on some of the issues you've raised. But if the testimony is believable, what's wrong with it? Because I think that testimony is inherently believable, but it doesn't get to the complicated and, I think, controversial issue of what they've been trained to do in terms of permittee challenges when it comes to race or gender or ethnic backgrounds, you know, whether or not it ever comes into play. Because they aren't really put on the stand in any significant way and asked about those questions in a way that might bring that out. And I don't think that an evidentiary hearing 8 years later could ever do that, honestly, and that's the problem with this case. But you shouldn't have conducted an evidentiary hearing? No, we didn't know prior to the evidentiary hearing whether or not there were notes, whether or not he had any memory of the case. So I think the evidentiary hearing is important. It's what importance do we imbue his statement that he has no memory, no notes, and no actual reason for dismissing those particular jurors? Even a race-neutral reason given in an evidentiary hearing could be shown to be highly suspect. For example, if someone said, I always excuse jurors who don't have this certain level of education, and this particular juror just happened to be African-American, but I always excuse everybody who doesn't have, you know, 2 years of college or something, then, you know, you know, an obvious follow-up question would be whether or not any of the Caucasian jurors who didn't have 2 years of college were also excused. It's not the case that just because a prosecutor has an opportunity to come up with a race-neutral reason, that that's always going to be plausible, or we'll explain the panel that wound up serving on the jury. True, but the whole reason why the Court would ask the prosecutor at the time of the dismissal is that there's an immediacy, and they don't have the time and reflective abilities to take the transcripts and look through and provide a reasonable reason. I mean, that's the case. But, you know, we do this all the time. We accept evidence all the time like this in other contexts. For example, in ineffective assistance of counsel claims, we ask, what was your strategic reason? And the defense counsel will say, I don't remember, but here's my practice. We ask, did you consult with the client? And he would say, this is the standard letter I send. I don't know if I sent it in this case. And you weigh the weight of that. I mean, so obviously there's a weight, but I'm not sure it's excludable per se. I mean, I just guess I disagree to the extent that when you're having an IAC claim, it's going to a lot of discretionary choices that go towards a defense, whereas here it's the jury of one's peers. And I think dismissal. I'm sorry? I'm sorry. It's dismissing a juror. You're supposed to be allowed the jury of your peers. And I'm just saying it's more crucial in terms of the outcome of your trial versus a mistake that may have not been made by your counsel. And one of the things I think is important in this context is I don't think there's a huge difference between Rita O. and the other juror that was kept. All right. Well, that's a more specific thing. Okay. Well, we'll save a minute or two for the bottle of the time you have over spent. May it please the Court, Deputy Attorney General Barton Bowers, on behalf of the Respondent. The district court in this case properly concluded that Mr. Shirmley had not met his burden to show purposeful discrimination in jury selection. And a couple things I'd like to correct, if I could, right off the bat, when the opposing counsel says the prosecutor testified and offered nothing more than pure speculation as to his reasons. The prosecutor did not have any memory of the case. Those are incorrect based on this record. The prosecutor testified he did recall the case, the charges, the defendant. The general aspects of the case, the one thing he did not have a specific recall was a specific memory of why he excused these two jurors. Everything else he remembered, including, of course, his general practice as a prosecutor, and a profile that he uses in every case, a nonracial profile, in selecting jurors. And so the right to say, for instance, I don't know if this is true, but I don't know whether we ought to waste time on this, but I mean, because I think we need to get some basic answers from you about what you believe, in general, the rules should be. But he didn't say, I always excuse people who don't go to college. He said, I prefer people who have some real-life experience. That's not the same as saying, if you haven't had three years of college, you can't serve on my juries. But what's your view of whether the practice is sufficient to satisfy prong two? If a prosecutor comes in and says, I have no notes, yes, I recall the trial, I don't recall the selection of the juror, I don't recall specifically why I did it, but here's my general practice. Do you believe that is a sufficient basis for introducing evidence that supports the prosecution at phase two? I believe it is sufficient, and it's not just that no Supreme Court case has condemned evidence like that. But taking our cue from the Supreme Court cases and Johnson itself, discussing the purpose of the burden-shifting framework of Batson, the purpose of requiring the prosecutor to produce evidence is to get those reasons into the record as soon as possible. That's why there is a prima facie case that shifts the burden to the prosecutor to get those reasons out there. Now, the Court has never condemned evidence of practice or habit that's given in some cases among other circuits, including Green v. Travis, that recognize that habit, pattern, and practice evidence is acceptable at stage two. So how does it work, then, in your view under Paulino if we're in a reconstruction case where there wasn't any action in the courtroom where the prosecutor was required real time to give a reason? So years go by and there's an evidentiary hearing. Let's say we get past stage one. There's an evidentiary hearing. The prosecutor doesn't remember anything, doesn't have anything, about the reasons for the peremptory challenge, and doesn't have notes. How does that work in Paulino II, where Paulino II said at stage three, then, there's nothing, there's no countervailing evidence? There's really nothing to weigh on the other side of the scale, in other words. I think Paulino steps a little too far when it holds that. And here's the reason, because Paulino, in effect, creates a presumption under those circumstances. So you're asking us to change our circuit law to rule your way? Do we have to do that, to rule your way? No, because Paulino is not implicated here, because we have evidence, of course, of pattern and practice in this case. This Court does not have to change Paulino. What I'm saying is Paulino cannot contradict the Supreme Court's rule in Johnson, which is to require these reasons be put into the record. Well, no reasons were put into the record here except the pattern and practice, right? The prosecutor did articulate reasons, and that is consistent with a case this Court decided in Turner v. Marshall, which is in the briefing, where the defendant made a challenge that the record was insufficient for review, and this Court held that the record was sufficient, even though the prosecutor did not have a total recall of the proceedings or the challenges. When you say total recall, let's just be sure that I'm not misunderstanding the record. My understanding here is that there was a really clear finding that the prosecutor had no recollection of the reasons he structures in this case and no notes. So he's relying entirely on his general practice. Have I got that right? No. The prosecutor did more. He did one thing more, which is he articulated reasons based on the transcript which he used to refresh his memory, to offer reasons why he would have struck these jurors, because he would have done the same under the circumstances. When you say refresh his memory, I didn't read anywhere in the transcript where he testified from memory, here's why I think I did this. And that's different than recreating what he's guessing he might have been thinking at the time. I'm not trying to split hairs, but I do think it's an important distinction, so. I grant that distinction. But when the Court says guessing and when or suggests guessing, this is not guesswork because this was the prosecutor's statement of his practice that no one else could offer, as opposed to, say, in Paulino where the prosecutor said, look, the Court can read the transcript, the Court's guess is as good as mine, the prosecutor had nothing extra to offer in that case. So in this case, maybe your answer is helpful in this way to me, to think about it a little differently. In this case, what we have is the same prosecutor. That's one distinction. If you have the very same individual who was there, that's, I guess, a little more indication that he or she is in a position to speculate or guess about what was in his or her mind at the time, as opposed to a different prosecutor coming in and picking up the file and looking at the record. There is that distinction. That's true. But factually, it's distinct from Paulino because the prosecutor in that case said she had absolutely no recollection. Of the case or any feature of it. And so that is very different here. The Court did reach the ultimate correct conclusion in this case based on the statistics, because the prosecutor did strike two African-American jurors, but a third remained on the panel. She was on the panel from the beginning. She remained to the end. There is no stark disparity in those statistics. The prosecutor used two of his preemptory challenges against African-Americans and used eight others against persons who are not African-Americans. And I'd like to observe one thing for the Court regarding statistics. A panel of 55 jurors was called up in this case. The record shows five of them were African-American. One ended up serving on the jury. That's one out of 12. That basically reflects one out of 11 or five out of 55 African-Americans in the total panel. Scalia. I don't know whether that gets you on this issue we're inquiring into. We're up to Stage 2. We have a prima facie case. We're up to Stage 2, where the prosecution has to give its reasons why this is not discriminatory. And the question is, at least I think the question we're trying to determine, is at that stage, if the prosecutor doesn't recall his reasons, doesn't have notes, having read the transcript, can't say, now I remember why, but says, all I can tell you is that I have a general practice. And under my practice, I could guess that I would have accused her for this reason. Is that appropriate? And he said, well, he thinks, yes, that Turner v. Marshall says that. But Turner v. Marshall was a case in which the prosecutor did review the transcript and said she generally could recall the trial, and reviewing the transcript had refreshed her recollection, and she gave the reasons that she believed she had done it after reviewing the transcript. That's a somewhat different you know, I'm not suggesting that what Judge Thomas has inquired about, that is this kind of a practice something we may do in other types of cases? And would it be a good practice here? Here, I think the district had rejected that argument, but then seemed to use on some basis that general approach in Step 3. But do you, are you aware of a Ninth Circuit case or a Supreme Court case that says it is sufficient to rely on a practice with no recollection of its application in the particular case? I'm aware of no authority holding that. I'm just saying it's not inconsistent with anything the Supreme Court has said. And that's the best answer I can give to Your Honor. And would it be your recommendation that we do this at Stage 2? Yes, it is, Your Honor. And if we do that at Stage 2, then what consequence does that have for this case? Well, then this Court, like the Court below, would go on to Stage 3, find the case that the defendant has not carried his burden to show purposeful discrimination under all the circumstances, including an appraisal of the prosecutor's reasons, which in this case are standard practice. Well, let me just say this, if we get to that stage. What kind of practice would it be that would be sufficient to rebut discrimination? I don't like to keep giving the same example, but it's simple. If the prosecutor said, I always strike people over 6 feet, unless there was a credibility question, if he did that and the person struck was over 6 feet, it would seem fairly persuasive. If he said, well, I don't like jurors who haven't gone to college, not that I always strike them, but depending on all the circumstances, I'd be more inclined to take somebody who had a graduate degree in physics than somebody who just graduated from high school and went out and got a job at McDonald's, is that enough to say, well, that's why I struck this person? I will say this, that a court's evaluation of the believability, the reasonability of the prosecutor's reasons is a component as to whether they're sufficient and acceptable. A component is whether the reasons as expressed have some basis in sound trial strategy. And I grant, Your Honor, there will be some cases where the reason that's offered is not sufficient. That is not this case. And part of how you know it's not this case is you can see the character and the education and the life experience of the jurors that were selected that are summarized on page 101 of the excerpts, footnote 11, summarizing the vast experience that the majority of these jurors had in this case. But does it bother you that a prosecutor would say people who didn't go to college shouldn't be on juries? No, Your Honor. It doesn't bother you? It doesn't. Do you think that people who don't go to college may be a far higher percentage of minorities don't go to college than whites? I don't know the statistics on that, but I can certainly understand a prosecutor preferring a juror who has more education than a juror who does. Even though that would eliminate substantially a far greater percentage of blacks than Hispanics. It's more than I know, but it's possible it could have an effect like that. Yes, Your Honor. And do you really believe that there are prosecutors who always challenge people who don't go to college? I haven't canvassed them myself, but I'm sure they exist, Your Honor. You're sure there are? I'm sure they exist, Your Honor. Maybe we ought to do a little affirmative action hiring in the U.S. Attorney's Office or the Attorney General's. I'll leave that to higher pay grades than mine, unless there are further questions  Thank you. Thank you very much. I just want to put this again in context of the original language from the district court, that this is a fiction, and that's part of my problem with the idea that we could take a reconstruction of what the prosecutor has gleaned from a transcript with no actual memory of the case. There was no refreshing of the prosecutor's memory here, and that's why I'm asking That's what I was stating when I said that the prosecutor had no memory of this case. I was putting it in the context of the juror selection. If that's true, wouldn't the prosecution always lose if they don't have notes or independent recollection? No. I believe that the delay of 8 years is why this case is unusual. I don't think that happens very often. But when it happens, my question is, if they don't have notes and don't have recollection, in your view, applying Paulino, would the prosecution always lose at stage 3 because they don't have anything to rebut, anything to use to rebut? No. There's going to be cases where there's going to be, like the Yee case, where there's going to be not a very strong prime face showing in the first place, and there's going to be obvious things in the record that show there was no purposeful discrimination. Whereas here, again, going back to the district court's analysis, in stage 3, one of my problems is the Rita O. in particular. She did not have a college education, but the comparative juror analysis was another juror who happened to be taking classes. Like, we have no – I mean, that's not enough for me. This is a preponderant standard. This is not beyond a reasonable doubt standard. And if we've already gotten to the point where we believe there may have been, which is a prime face showing, then I don't see how that, in addition to the fact that the State cannot reasonably show an actual reason for dismissing those particular jurors, that we don't have sufficient showing. Kagan. So Paulino says at stage 3, if there's nothing from the prosecutor at stage 2, that generally that would be enough. Correct. But there are – circumstantial evidence may be sufficient, even though there's nothing at stage 1 or 2. I don't really know what that means, but it suggests that you can't say 1 and 2, you It still leaves an opening, and I don't know what it is that would be sufficient at that opening. And I suppose, depending on how you come out on phase 2, you'd have to then consider what is it that would be appropriate. I agree. I think it says it would be the unusual case, but it would still be the case. I mean, if the judge looked at the record and saw an obvious, overwhelmingly compelling reason why that juror would have been challenged, would that be enough? Is that circumstantial evidence? I mean, I think the reason that it's so hard is that the second prong of Batson is to get that contemporaneous explanation from the district attorney. And when that's lost, it's very difficult to provide some kind of analysis without penalizing the defendant, because if we're going to let the prosecutor go back from the transcript and no actual memory of the particular jurors of the particular case, that does penalize the defendant. Why? I mean, it's still the defendant's burden. True. It is. And I think that in order to satisfy the prima facie showing, you had to have shown something. But the burden never shifts all the way through, right? Correct. Pauline is clear on that. Correct. Correct. And then it's just a matter of what we can show as evidence to counter the showing of purposeful discrimination. And if we allow the prosecutor to go back and recreate the circumstances and justify it, I think we're getting away from the whole purpose of Batson in general, which is an actual reason. Well, very interesting. Thank you both very much. The case is argued will be submitted.
judges: Reinhardt, Thomas, Christen